No. 16,086.

CHITWOOD ET AL. *v.* CITY AND COUNTY OF DENVER ET AL.
(201 P. [2d] 605)

Decided December 20, 1948.

Mr. RICHARD E. BISHOP, Mr. PERCY A. ROBINSON, for plaintiffs in error.

Mr. J. GLENN DONALDSON, Mr. MALCOLM LINDSEY, Mr. ABE L. HOFFMAN, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFFS in error were plaintiffs in the trial court. They appeared individually as taxpayers and voters of the City and County of Denver, and also on behalf of all others similarly situated, seeking an order of court holding that the proposed scheme for a "Valley Highway" under a certain Ordinance No. 50, series of 1948, was unlawful and void and beyond the discretion of the mayor or the city council to adopt, promote or perform. Plaintiffs also seek to have the ordinance itself declared unlawful and unconstitutional in its objects, purpose and effect, and to have defendants enjoined and restrained from proceeding under, or attempting to accomplish the expressed purpose of the plan and ordinance, and they ask that anything already done to that end be decreed to be void and of no effect. The trial court resolved all issues in favor of defendants and dismissed plaintiffs' complaint. The losing plaintiffs, three of whom own property in the line of the "Valley Highway" as proposed in Ordinance No. 50, come here seeking reversal.

The circumstances of this case arise from the con-

struction of the so-called "Valley Highway," following generally the course of the South Platte River through the City and County of Denver. It appears that the funds for its construction are to be supplied by the state of Colorado and the United States government. Denver's contribution to the project is to acquire the necessary right-of-way. In furtherance of this arrangement, the city council passed Ordinance No. 86, series of 1947, authorizing the execution of an agreement between the city and the state highway engineer for the construction of the "Valley Highway" as a north and south thorofare through Denver.

It is recited in the later Ordinance No. 50, which is the object of attack in this action, that a considerable portion of the first section of the right-of-way for the "Valley Highway" is on land owned by the Chicago, Burlington and Quincy Railroad Company, and that the railroad company is unwilling to sell this land for cash but will accept a certain tract of 308.45 acres of land in exchange. The latter tract, owned by the Evans Investment Company, has been optioned to the city and county at a price of $537,810. Of this amount the railroad company has agreed to pay $30,000, leaving a net cost to the city of $507,810. It is further recited in the ordinance that the latter sum is the appraised value of the railroad company's land which the city desires to acquire. The evidence disclosed that the foregoing appraisal was made by N. Lee Foster, and that two other appraisers, Barclay Ivins and Watson Bowes, each separately and independently, concurred in the Foster appraisal. On the basis of the appraisal, the ordinance contains the recital that the manager of improvements and parks of the city advised that it is to the best interests of the city to carry out the plan above outlined. The city council thereupon authorized the conclusion of the transaction and entered into an agreement with the railroad company under which the latter would convey its property to the city in

exchange for the city causing the Evans company property to be conveyed to the railroad company.

In their brief, plaintiffs consolidate their ten specifications under three headings:

I.  That sections 1 and 2, article XI, of the Colorado Constitution were violated, in that the city, unless otherwise restrained, under Ordinance No. 50 would be "(A) engaging in real-estate trading business; (B) paying over half a million dollars for acreage property not directly needed by the city; (C) or appraised by anyone or any court, or by competitive appraisements; (D) acting as agent for the Burlington railroad in finding property, in lieu of cash or condemnation, and (E) joining with it in payment therefor. (Specifications 1, 2, 3, 4, 6, 7, 8.)"

(a) We do not believe that this transaction violates section 1, article XI, of the Colorado Constitution which specifies that, "Neither the state, nor any county, city or town * * * shall lend or pledge the credit or faith thereof, directly or indirectly, in any manner to, or in aid of, any person, company or corporation, public or private, for any amount, or for any purpose whatever; or become responsible for any debt, contract or liability of any person, company or corporation, public or private, in or out of the state." The process of lending or pledging one's credit contemplates a period of time over which the credit is lent or pledged. The transaction set out in Ordinance No. 50 is essentially a cash transaction. It contemplates not deferred payments, but the contemporaneous deeding of the Burlington company property to the city, and of the Evans company property to the Burlington company, and the payment of cash to the Evans Investment Company. The only difference between the ordinary cash transaction, where A pays B cash for property, is that here B does not want cash but is willing to give its property in exchange for C's property. C is willing to accept cash for its property; A pays C cash in consideration of C turning over its property to B, and

B thereupon turns over its property to A. The net result is the same, so far as A is concerned. In either case A has paid out the same amount of cash in consideration for acquiring B's property.

█ (b) We do not believe Ordinance No. 50 violates section 2, article XI, of the Colorado Constitution, which provides, inter alia, that, "Neither the state, nor any county, city, town * * * shall make any donation or grant to, or in aid of, or become a subscriber to, or shareholder· in any corporation or company, or a joint owner with any person, company or corporation, public or private, in or out of the state * * *" except for non-payment of taxes or by devise or penalty or forfeiture, etc. In the transaction contemplated under Ordinance No. 50, the city clearly is not making any donation or grant to any other corporation or company, and is obtaining exactly the same property and paying the same amount of cash as it would have paid if it had dealt solely with the Burlington company, and as if the Evans Investment Company had not been a party to the transaction. The three-cornered arrangement for which provision is made under Ordinance No. 50 is somewhat similar to that involved in *Carter v. City of Greenville,* 175 S.C. 130, 178 S.E. 508. In that case, the city sought to acquire a property owned by the federal government. The federal government was willing to dispose of its property, provided it could obtain the privately owned Ware property. The city thereupon agreed to turn over its old city hall property, which it was abandoning, and the sum of $15,000 to the owners of the Ware property which would thereupon be transferred to the United States, which in turn would transfer its property to the city upon which to erect a new city hall. In that case the court said: "In addition, it is argued for the city, and not without reason, that there is nothing in the city's proposal or its option on the Ware property which prevents it from having that property conveyed by its owners directly to the United States." See, also, *Darwin v.*

*Town of Cookeville,* 170 Tenn. 508, 97 S.W. (2d) 838. This principle of compensation by substitution has also been recognized in the federal courts: *Brown v. United States,* 263 U.S. 78, 44 Sup. Ct. 92, 68 L. Ed. 171; *Dohany v. Rogers,* 281 U.S. 362, 50 Sup. Ct. 299, 74 L. Ed. 904, 68 A.L.R. 434; *United States, ex rel. v. Welch,* 327 U.S. 546, 66 Sup. Ct. 715, 90 L. Ed. 843. On the other hand, as stated by the trial court, "Counsel for the plaintiffs have not cited any case which has denied the rights of the municipality to acquire land through negotiations by giving the owner thereof a substituted compensation."

From what we have said it is evident that we are of the opinion that *Lord v. Denver,* 58 Colo. 1, 143 Pac. 284, upon which counsel for the plaintiffs rely, is not controlling in this case. There we held that a proposed amendment to the Denver charter, known as section 355, purporting to create a tunnel commission, did violate sections 1 and 2, article XI of the Colorado Constitution, in that (1) it pledged the credit of the city in aid of a private corporation, and (2) created a partnership between the city and the railway company. In the instant case, for the reasons already given, we believe no credit has been pledged by Denver, and no partnership involving Denver has been created. *Lord v. Denver, supra,* is the subject of annotations in L.R.A. 1915 B, page 306, and in Annotated Cases 1916 C, page 893, and more recently has been mentioned in the Annotation in 161 A.L.R. beginning at page 518 on the subject of the constitutional prohibition of municipal corporations lending their credit as applicable to selling or leasing of property. Nothing is disclosed in these three annotations which in any way tends to change our opinion that the decision in *Lord v. Denver, supra,* is not applicable to the instant case.

Other cases in which we have held that sections 1 and 2, article XI, have not been violated are: *Millheim v. Moffat Tunnel Improvement Dist.,* 72 Colo. 268, 211 Pac. 649; *McNichols v. Denver,* 101 Colo. 316, 74 P. (2d) 99.

In the federal jurisdiction, *Surgi v. First National Bank,* 125 F. (2d) 425, 429, defines commingling in such a way as to demonstrate its nonexistence in the instant case.

■ II. The next argument is, "Furthermore, the failure of the city and county officials to appraise or procure an appraisement of any kind, legal or otherwise of the Evans property was a breach of duty toward the taxpayers. (Specification X.)"

If the city were acquiring the Evans company property, then we would agree with this contention of plaintiffs; but the city is not acquiring that property. It is acquiring the Burlington company property, and on that property it has had three appraisements. The final result of these transactions is that in acquiring the Burlington company property it will pay the amount fixed by the three appraisers. It is the Burlington company, however, that is acquiring the Evans property, and it is for it to determine whether that property meets its requirements of value. With that we are not concerned in this action.

Counsel for plaintiffs imply that the city may be turning over, or causing to be turned over, the Evans property to the Burlington company at a grossly inadequate price. If such is the case, it is the Evans company that is the loser. If, on the other hand, the property is not worth the price at which the Evans company is willing to convey, then it is the Burlington company that is making a bad bargain and not the city. In any event the city is acquiring the Burlington company property at the price which the three appraisers of its own selection placed upon it. There appears to be no direct allegation in plaintiffs' complaint that the Burlington company property, being acquired by the city for the "Valley Highway," is not worth the sum of $507,810; nor was any evidence introduced, or sought to be introduced, showing that the Burlington company property was not worth that sum. This case — in pleadings, evidence sought to be introduced, and type of judgment entered—

is therefore quite different from that of *Tamblyn v. Denver,* 118 Colo. 191, 194 P. (2d) 299, upon which plaintiffs rely.

■ III. The third contention is that, "The attempted authorizing Ordinance No. 50, was not sufficiently definite in its description of the properties involved or attempted to be traded, to be a legal ordinance or authority for the trade. (Specification IX.)"

Exhibits A, B and C, introduced in evidence, were maps showing the properties involved in the transaction. It is alleged that the Evans company property is merely described as a tract of 308.45 acres in certain sections located in Adams county and in the City and County of Denver, and that the railroad company property is described in the ordinance as being a portion of the right-of-way of the first section of the "Valley Highway" and owned by the Burlington Railroad Company. The accompanying maps indicate the portions of the "Valley Highway" which Denver is acquiring from the railroad company. None of the three parties involved in this proceeding has complained that there is any misunderstanding as to the properties to be conveyed, and the appraisers indicated that they knew what property they were appraising. There is nothing in the record to show that, assuming that Ordinance No. 50 does not give a minute legal description of the properties involved in this transaction, the parties do not have it available or that a complete legal description can not be readily obtained. That is certain which can be rendered certain, seems an applicable principle here. No inaccuracy or ambiguity has been shown to exist as between the contracting parties.

■ Finally, it is inferred that the city should have resorted to condemnation (10th specification). We know of no rule that prevents parties who may become antagonists in a condemnation suit from making a settlement in advance of, as well as after, the bringing of an action. Delay, uncertainty and expense are thus avoided.

Nor are we aware of any decision that holds that litigation must be undertaken at all costs or in any event. Nor has any statute been cited which contains such a provision in condemnation matters. The general rule, that the avoidance of litigation, where possible, is to be commended, is applicable here.

The judgment is affirmed.