No. 18,492.

THE TOWN OF GREENWOOD VILLAGE *v.* DISTRICT COURT OF
FIRST JUDICIAL DISTRICT, ET AL.
(332 P. [2d] 210)

Decided November 24, 1958.   Rehearing denied December 15, 1958.

Messrs. ENOS, BUCHLER & BUCHLER, for petitioners.

Mr. DUKE W. DUNBAR, Attorney General, Mr. JOHN P. HOLLOWAY, Assistant, Mrs. PATRICIA H. MALOY, Assistant, Mr. J. SHERMAN BROWN, County Attorney, Arapahoe County, for respondents.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS is an original proceeding in the nature of certiorari. We will refer to the Town of Greenwood Village as the Town and to the respondents by name.

May 24, 1957, the Board of County Commissioners of Arapahoe county and the Department of Highways of the State of Colorado filed their petition in condemnation against numerous defendants, in which they alleged

facts essential to the exercise of the power of eminent domain. The petition concluded with a prayer for relief as provided for in the condemnation statute. All the property sought to be condemned lies within the boundaries of the Town. Individual defendants appeared in the action and filed their objections in the form of a motion to dismiss and plea in abatement. They claimed that numerous provisions of the Constitution of Colorado were violated by the procedures taken in the condemnation suit. No good purpose would be served in setting forth a more detailed statement with regard thereto.

June 19, 1957, the Town filed its cross petition in said action. This petition raised all the objections set forth in the motion to dismiss and plea in abatement to which reference is made above. The prayer of the petition was that the proceedings instituted by the Board of County Commissioners and the Department of Highways be dismissed and that the Town be permitted to intervene in the action. The court by order permitted the intervention of the Town.

All of the objections of the Town were heard and overruled by the trial court and a time was then fixed for a hearing on the question of temporary possession. The Town did not appear at the hearing thus ordered and on the 15th day of November, 1957, it was decreed that, "The petitioners may take possession, use, and enjoy said parcels of land as against the respondents and their successors, heirs, assigns, devisees, and personal representatives and each of them and all persons whomsoever * * *. This possession to be granted if and when the petitioners make the deposits as hereinabove specified." On November 25, 1957, the required deposits were made.

December 2, 1957, the Town sought to invoke the original jurisdiction of this court by filing its petition in the nature of certiorari by which it seeks an order of this court to "vacate, annul, and set aside said unlawful proceedings," or such other relief "as justice and the law may require." Rule to show cause was issued and the

matters now presented are substantially the same as those submitted to the trial court in the condemnation proceedings.

Counsel for the Town present their argument to make the rule absolute under three captions as follows:

(1) That the statute authorizing the procedure (which is stated to be C.R.S. '53, 120-3-17) is ineffective for the reason that it has been repealed, or is unconstitutional, or is subject to the qualification that the consent of the Town is essential under the terms of C.R.S. '53, 120-13-35 (10).

(2) That the petition in condemnation is fatally defective for the reason that it does not allege any "consent or agreement on the part of the Town of Greenwood Village to the attempted acquisition of the parcels described in the complaint."

(3) That if the statute is construed to mean that no consent of the Town is necessary it would be unconstitutional in that it would violate the provisions of Section 7, Article X, and Section 25, Article V, of the Constitution of Colorado, as well as the due process clause of the state and federal constitutions.

The Attorney General, on behalf of respondents, advances several points in support of his prayer that the rule be discharged. We consider only one of these points, the consideration of which resolves the controversy. This argument is that the statutes of Colorado do not require the consent or agreement of a municipality as a condition precedent to the exercise of the power of eminent domain.

Questions to be Determined.

**First:** *Is there a valid statutory authority under which the Department of Highways can lawfully condemn public or private property within a municipality for the purpose of continuing state highways into or through that city or town?*

This question is answered in the affirmative. C.R.S. 1953, 120-3-8, after setting forth procedures which

the state highway commission may follow in acquiring private property without exercising the right of eminent domain, concludes with this grant of authority:

"The state highway commission also shall have the power, and it is hereby authorized, to proceed in the acquisition of the lands of private persons, for state highway purposes, under and according to said eminent domain chapter in the first instance, without tender or other proceedings under this article."

C.R.S. '53, 120-3-17, reads as follows:

"For all of the purposes of this article, and, with respect to state highways, for all the purposes of sections 120-6-1 to 120-6-10, state highways or county highways may be designated, established and constructed in, into or through cities and counties, cities or towns, when such highways form necessary or convenient connecting links for carrying state highways or county highways into or through such cities and counties, cities or towns, and for such purposes the department of highways and the boards of county commissioners of the several counties may condemn or otherwise acquire rights-of-way and access rights. Each state and county highway in a city and county, city or town shall be maintained by such city and county, city or town. By agreement between any such city and county, city or town and the chief engineer with respect to a state highway, or the board of county commissioners with respect to a county highway, the department of highways or the board of county commissioners, as the case may be, may agree to perform or pay for all or a part of the maintenance of such state or county highway in such city and county, city or town."

The contention that this section of the statute has been repealed is without merit. The said statute in its original form contained a provision for a three per cent fund payable to cities, which was abolished by Session Laws of 1953, page 164, section 7. No other part of the statute was repealed. That portion of the section which reads,

"Each state and county highway in a city and county, city or town shall be maintained by such city and county, city or town," has been superseded by the subsequently enacted provision contained in C.R.S. '53, 120-13-3, which reads in part as follows:

"In all cases where any part of the state highway system extends into or through a city or incorporated town, the construction and maintenance of such systems shall remain the obligation of the department of highways."

Although each of the sections above mentioned was re-enacted when the legislature adopted the Colorado Revised Statutes, because of the inconsistency the statute most recently adopted controls. *Thompson v. People,* 136 Colo. 336, 316 P. (2d) 1043.

Additional statutory authority for the condemnation of the land in question is to be found in C.R.S. '53, 120-13-35 (11), where we find the following:

"The department of highways is authorized to acquire rights of way by purchase, gift or condemnation for any such streets, highways, and bridges. Any such condemnation proceeding shall be exercised in the manner provided by law for condemnation proceedings to acquire lands required for state highways. * * * "

From the above quoted statutory provisions it is clear that ample authority has been granted the department of highways to pursue the remedies sought in the condemnation case here involved.

Second: *Can the state and county, or either of them, take and condemn private and public properties, located within a municipality, for highway purposes without the consent or agreement of the municipality wherein such properties are located?*

This question is answered in the affirmative. It is argued by counsel for the Town that C.R.S. '53, 120-13-35 (10), requires agreement between the department of highways and a municipality before the right to condemn may be exercised. This subsection of the statute reads as follows:

"Rights of way for such street shall be acquired by either the city, city and county, or incorporated town or by the state as shall be mutually agreed upon. Costs of acquiring such rights of way may be at the sole expense of the state or the city, city and county, or incorporated town, or both, as may be mutually agreed. Title to all rights of way so acquired shall vest in the city, city and county, or incorporated town, or the state, according to the agreement under which said rights of way were secured."

This language unquestionably authorizes resort to agreement concerning the acquisition of property; however, it is only an optional method and is permissible as a substitute for proceedings in condemnation. This is made clear by the next subsection, 120-13-35 (11), previously quoted.

Considering the two subsections together, we hold that subsection 10 is permissive only and does not make consent of the Town a prerequisite to condemnation of private property within the corporate limits, or to condemnation of public property already in use for street purposes, the fee title to which lies in the Town.

Third: *Does C.R.S. 1953, 120-3-17, offend against Section 7, Article X, Section 25, Article V, or the due process clause of the Constitution of the State of Colorado, or the due process clause of the Constitution of the United States?*

■ This question is answered in the negative. Section 25, Article V, of the Colorado Constitution provides, inter alia, that, "The General Assembly shall not pass local or special laws in any of the following enumerated cases, * * * laying out, opening, altering or working roads or highways; * * *." The statutes being subjected to the test of constitutionality under the above quotation are state-wide and general in their scope and are not specifically designed or intended for local application. They cannot be said to be "special laws" within the coverage of the constitutional provisions above quoted.

The argument is further made by counsel for the Town that the pertinent statutory provision of C.R.S. '53, 120-3-17, offends against section 7, Article X, of the state constitution. This section prohibits the General Assembly from imposing taxes for the purpose of any county, city, town or other municipal corporation. The argument of counsel for the Town is that the statute requires certain duties of highway maintenance to be performed by the town on state highways, and that to perform these duties special taxation is required, and therefore the state is levying a tax upon the town.

As already pointed out under another portion of this opinion, there is no longer any duty upon the town to maintain the highway within the municipality. C.R.S. 1953, 120-13-3, has shifted the responsibility for maintenance to the department of highways; but apart from this fact there is no merit to the argument. When the General Assembly defines certain duties and obligations to be performed by counties, cities and towns it cannot be said that a tax has been levied by the legislature. It would be most unreasonable to assert that if the General Assembly prescribed minimum standards to protect the general welfare and imposed the responsibility of maintaining such standards upon local communities, such a statute would constitute the levying of a tax by the legislature.

The rule is discharged.