No. 19,007.

MADALINE M. WELCH *v.* CITY AND COUNTY OF DENVER, ET AL.

(349 P. [2d] 352)

Decided February 16, 1960. Rehearing denied February 29, 1960.

Mr. I. H. KAISER, Mr. LESLIE A. GROSS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. JOHN P. HOLLOWAY, Assistant, Mr. JOSEPH M. MONTANO, Assistant, for defendants in error Mark U. Watrous and State Highway Commission.

Mr. DONALD E. KELLEY, Mr. EARL T. THRASHER, Mr. HANS W. JOHNSON, for defendant in error City and County of Denver.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error will be referred to as Welch. Defendants in error will be mentioned as defendants, except where the reference is to less than all of them, in which event they will be referred to as The City,

Watrous, or The Commission, as the occasion may require.

Welch filed the action in the district court of the City and County of Denver for the purpose of securing a declaratory judgment determining the rights of the parties as affected by two Ordinances adopted by the Council of the City of Denver (302 and 316, Series 1958). The ordinances provide in pertinent part, "That the Council of the City and County of Denver hereby gives and grants unto the Department of Highways of the State of 'Colorado the right and privilege to construct and maintain a street and highway in, upon, over, along and across the following described real property situate, lying and being in the City and County of Denver, State of Colorado, to wit:" (Here follows a detailed description of a narrow strip of land abutting on Colorado Boulevard and extending along the eastern boundary of City Park.) After this description the ordinances contain the following pertinent language:

" * * * in connection with and as a part of the improvement or project for improving a portion of State Highways No. 153 and No. 2 which pass through the City and County of Denver, or what is known as Colorado Boulevard, the said improvement or project being known and designated as D.U. 029-1(5)."

Welch, a resident and taxpayer of the City, alleged in her complaint that the proposed grant of the park land to the Department of Highways was void for the following reasons:

That the ordinances violated Article XX, Section 4 of the State Constitution; that they violated Article 3, Section 5 of the City Charter; that public policy and the law of our Courts holding the inviolability of park lands has been completely ignored by the passage of said purported ordinances and the 'give away' of park lands therein"; and various other allegations to the effect that alternate routes were available to the Highway Depart-

ment all of which related to the necessity for acquisition of the particular property.

Under well established principles we are not concerned in this action with the allegations last mentioned, and consider them no further other than to say that in the absence of a showing of bad faith on the part of the agency acquiring property for highway purposes, the determination of the administrative body as to the necessity for the particular acquisition will not be disturbed by the courts. 18 Am. Jur. 733, Sec. 106, et seq.

The issues were those of law since there was no dispute in any material facts.

The trial court upheld the ordinances and entered judgment accordingly. Welch seeks review by Writ of Error.

The pertinent provision of the Charter of the City as adopted by the electorate May 17, 1955, is:

"No portion of any park land now belonging to or hereafter acquired by the City and County of Denver shall be sold or leased at any time * * *."

Counsel for Welch argues:

(1) That the City Council "was powerless to change the status of dedicated park land without a vote of the eligible voters" of the City; and

(2) That "the common law" of the State of Colorado requires that dedicated park land shall be used exclusively for park purposes and is held by the City in trust for those purposes.

Counsel for Defendants concede that the City is precluded by applicable charter provision from the *voluntary* sale or lease of public park lands, and further concede that said lands "may be subject to a municipal common law trust for the use of the people of the City." It is contended, however, that neither the charter provisions nor an alleged municipal common law trust can impose restrictions upon the State seeking to acquire the same for the public purpose of highway construction.

Question to be Determined.

*Where a municipality holds title to land that has been dedicated to long continued use for park purposes and the Charter of the City provides that park land owned by the City shall not be leased or sold at any time; does such Charter provision prevent the State of Colorado, under its power to condemn lands for highway purposes without restriction, from acquiring such land for that purpose?*

The question is answered in the negative.

■■ The State has power to acquire, by condemnation or otherwise, lands of a municipal corporation already devoted to public uses. This power by C.R.S. '53, 120-3-17 and 120-13-35 (11), has been delegated to the Department of Highways.

C.R.S. '53, 120-3-17, provides as follows:

"INCLUSION OF STREETS IN HIGHWAYS. For all of the purposes of this article, and, with respect to state highways, for all the purposes of sections 120-6-1 to 120-6-10, state highways or county highways may be designated, established and constructed in, into or through cities and counties, cities or towns, when such highways form necessary or convenient connecting links for carrying state highways or county highways into or through such cities and counties, cities or towns, and for such purposes the department of highways and the boards of county commissioners of the several counties may condemn or otherwise acquire rights of way and access rights * * *."

C.R.S. '53, 120-13-35, provides as follows:

"DIVISION OF AUTHORITY OVER STREETS. The jurisdiction, control and duty of the state, cities, cities and counties, and incorporated towns with respect to streets which are a part of the state highway system shall be as follows:

* * *

"(11) The department of highways is authorized to acquire rights of way by purchase, gift or condemnation

for any such streets, highways, and bridges. Any such condemnation proceeding shall be exercised in the manner provided by law for condemnation proceedings to acquire lands required for state highways * * *."

These statutory provisions grant express authority to the Department of Highways to condemn lands required for Highway purposes.

In *Town of Greenwood Village v. District Court,* 138 Colo. 283, 332 P. (2d) 210, the Department of Highways sought to condemn lands partially owned by the municipality and devoted to public use for highway purposes. It was there held, inter alia, that valid statutory authority exists under which the Department of Highways can lawfully condemn public or private property within a municipality for the purpose of continuing state highways into or through cities or towns. Although park lands were not there involved, the principle is identical as far as acquisition by the state is concerned.

In *Burns v. Metropolitan District* — Mass. — 92 N.E. (2d) 381, it was proposed to erect a public way which was to be located in part upon lands belonging to the City of Boston, which were dedicated park lands. Pertinent statutes prohibited the disposition of park lands except with the consent of the City expressed by a vote of the electorate. Residents of Boston alleged that it was unlawful for park lands to be used for a public way in the absence of such vote, and sought injunctive relief. The court said, inter alia:

"A decision for plaintiffs involves acceptance of the proposition that by (applicable statutes) the Commonwealth has subjected its power of eminent domain to the consent of the city, to be expressed, in certain circumstances by the vote of inhabitants. This proposition cannot be maintained * * *."

From the Colorado statutes above quoted, and the cases cited, it is clear that there are no limitations on the type of property that can be acquired by the State,

through condemnation proceedings or otherwise, for highway purposes.

In the instant case, the State, through its Department of Highways, being vested with the power of eminent domain, acquired the lands in question from a governmental subdivision following negotiation, and confirmed by the City ordinances under attack.

It should be further pointed out that as a condition precedent to the institution of eminent domain proceedings, the law requires that an attempt be made by negotiation to agree upon the compensation to be paid for the lands sought to be acquired. C.R.S. '53, 50-1-2, *Mulford v. Farmers Reservoir and Irrigation Company*, 62 Colo. 167, 161 P. 301. *Old Timers' Baseball Association v. Housing Authority of Denver*, 122 Colo. 597, 224 P. (2d) 219, and *Stalford, et al. v. Board of County Commissioners of Prowers County*, 128 Colo. 441, 263 P. (2d) 436. In the case at bar, pursuant to successful negotiations which avoided a condemnation action, the City Council enacted ordinances authorizing the use of the park lands by the Department of Highways for highway purposes. It is agreed that negotiations were had and that compensation and damages were paid for the park lands.

■ Where agreement was reached between the state and the city, why should the state be compelled to institute condemnation proceedings? By enacting the ordinances authorizing the use of park lands for highway purposes, all was accomplished by agreement that would otherwise have had to be accomplished by condemnation proceedings. The acts of the Council were in harmony with the well established rule of law announced by this Court in *Chitwood v. City and County of Denver, et al.*, 119 Colo. 165, 201 P. (2d) 605, wherein ordinances relating to an exchange of property were alleged to be invalid. The complaining taxpayers argued that the City should not have purchased exchange property and inferred that the City should have resorted to condemna-

tion in order to acquire the property needed for the right of way. With respect to such requirement this Court, at page 172, held:

"We know of no rule that prevents parties who may become antagonists in a condemnation suit from making a settlement in advance of, as well as after, the bringing of an action. Delay, uncertainty and expense are thus avoided. Nor are we aware of any decision that holds that litigation must be undertaken at all costs or in any event * * * The general rule, that the avoidance of litigation, where possible, is to be commended, is applicable here."

There is no merit to the argument advanced by counsel for Welch that the park land in question was held by the City under a common law trust and that by reason thereof the State of Colorado could not acquire the same in the manner shown by this record.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON dissents.

MR. JUSTICE HALL did not participate.

MR. CHIEF JUSTICE SUTTON dissenting:

I respectfully dissent.

The parties to this action have stipulated that the land in question was held by Denver as *trustee* for park purposes only. Neither C.R.S. '53, 120-6-10, allowing for the purchase or condemnation of local service roads, nor 120-13-35 (11) which allows the state to acquire lands for state highway purposes by purchase, gift or condemnation authorize a trustee to dispose of trust land without the consent of the trust beneficiaries by way of sale or gift. Thus I believe the plaintiff in error (hereinafter called the plaintiff) to be correct when she urges that eminent domain proceedings are the only means by which her interests, and those of other citizens, can be taken from them.

Trust property is held, whether by an individual, pri-

vate corporation or municipal corporation, for the beneficiaries of the trust. Here the land was held for the benefit of this plaintiff and other citizens of Denver. *They had a special interest in it* as distinguished from the general public interest in public property. The fact that Denver holds this particular park land as trustee for park purposes only distinguishes it from lands acquired or held by Denver for general governmental or proprietary purposes. As to the latter types of lands the City Council, unless expressly restricted, could make a sale thereof to the state by city ordinance. As to its park trust property it was necessary to require the state to prove the necessity of the taking and the amount to be paid therefor in a court of law, *where the trust beneficiaries could appear and be heard.* It is their equitable right, not that of the mere legal title holder, which is involved.

This plaintiff's rights have been guaranteed by Sections 3 and 6 of Art. II of the Colorado Constitution, which provide that all persons have the "inalienable" right "of acquiring, possessing and protecting property" (Sec. 5); and that "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; * * * " (Sec. 6). Insofar as the statutes in question have deprived the plaintiff of her day in court they also violate the Fourteenth Amendment to the United States Constitution which expressly provides in part that " * * *; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to. any person within its jurisdiction the equal protection of the laws."

As I read it, Section 4, Article XX of the Colorado Constitution does not require the city to put the matter to a vote of the people as urged by plaintiff; such vote is required by that section only for "franchises" to streets, alleys and public places, and the use intended by the state is not within the terms of that section. However, section 5 of Article 3 of the Charter of the City and

County of Denver as revised May 15, 1955, does provide that "No portion of any park now belonging to or hereafter acquired by the City and County shall be sold or leased at any time. * * *." Plaintiff correctly urges that this does not authorize a sale even to another public body for any purpose unless the matter is first submitted to a vote of the people, in whom rests the power to change this charter provision if they so wish. Of course, the prohibition against sale or lease must fall before the power of the state in *condemnation proceedings* as pointed out by the majority opinion, citing *Town of Greenwood Village v. District Court* (1958), 138 Colo. 283, 332 P. (2d) 210, and *Burns v. Metropolitan District* (1950), 325 Mass. 731, 92 N.E. (2d) 381. With this I agree but I cannot agree that the statutes or these cases stand for the proposition "that there are no limitations on the types of property that can be acquired by the State, through condemnation proceedings *or otherwise,* for highway purposes." (Emphasis supplied.) Nor can I agree that any statute or case cited by the majority opinion relating to the necessity for prior negotiations for settlement, applies to a situation such as that before us, where court proceedings are required to overcome express charter prohibitions.

It might be that had proper proceedings been conducted in court it would have been determined that the taking was not necessary, or that it could have been done cheaper by widening the highway on both sides, or on the east side instead of the west side only, as was done. In all of these matters the plaintiff had the right to be heard in court, and that right has been denied to her.

The City and County of Denver should have been the first to recognize its responsibility to refrain from sitting as both judge and jury on its own trusteeship. While this writ of error was pending it should not have risked the possibility that it would have to take back what it had disposed of, or restore at the taxpayers' expense the many trees destroyed by its action.

I would reverse the trial court and order proper condemnation proceedings through the courts to determine the necessity for the taking and the just compensation to be paid if the taking was justified.