## No. 16,537.

OLD TIMERS BASEBALL ASSOCIATION OF COLORADO ET AL. *v.* HOUSING AUTHORITY OF THE CITY AND COUNTY OF DENVER ET AL.
(224 P. [2d] 219)

Decided October 30, 1950.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Mr. AL-
BERT E. SHERLOCK, Mr. ALBERT T. FRANTZ, Mr. MILTON
BERGER, Mr. DARWIN D. COIT, Mr. GEORGE A. CROWDER,
Mr. RICHARD DOWNING, Mr. FRED M. WINNER, Mr.
CHARLES A. MURDOCK, for plaintiffs.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, Mr.
GILBERT GOLDSTEIN, for defendants.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS is an original proceeding in the nature of prohibi-
tion brought pursuant to Rule 106, R.C.P. Colo., to re-
quire defendants to show cause why a certain action, No.
A71032, entitled "The Housing Authority of the City and
County of Denver, a Municipal corporation, vs. Florence
M. Ames, Old Timers Baseball Association, a Colorado
Corporation, et al.," pending in the district court of the
City and County of Denver, should not be dismissed for
the reason, as alleged, that said district court was with-
out jurisdiction to proceed therewith. The district court
action, to which reference is made, is one brought by
the Housing Authority to condemn certain unplatted
land situate in section 9, township 4 south, range 68
west, of the 6th P. M., City and County of Denver, for
the purpose of constructing thereon a housing project.
In accordance with the prayer of the complaint filed
herein, an order was entered July 24, 1950, requiring
that the Housing Authority and the District Judge, show
cause why they should not be prohibited from conduct-
ing further proceedings in said action. The material
portion of said order is as follows:

"Wherefore, defendants are directed pursuant to order
of court, within twenty days of the date hereof, to show
cause why they should not be prohibited from conduct-

ing further proceedings in Civil Action No. A-71032 in the District Court of the Second Judicial District, which case is entitled 'The Housing Authority of the City and County of Denver, a Municipal corporation, petitioner, vs. Florence M. Ames, et al., respondents'; and defendants shall cause to be certified to this Court a transcript of all proceedings, including a transcript of all testimony, in said case No. A-71032, within said twenty day period; and defendant Alfred A. Arraj, as said Judge, shall stay all further proceedings in said case No. A-71032, pending a complete determination of the issues before this Court."

Thereafter in compliance with the writ and on September 11, 1950, defendants filed, "Return on Order to Show Cause," to which plaintiffs, after leave, filed their reply.

Rule 106, R.C.P. Colo., provides inter alia, that our review of a trial court's proceedings "shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion."

The gist of the contention of plaintiffs generally is, that the trial court did not have jurisdiction of the case, in that the Housing Authority did not, prior to the institution of its condemnation proceeding, negotiate with plaintiffs in an effort to reach an agreement upon compensation to be paid for the property sought to be condemned. Specifically it was alleged in the complaint filed in this court:

"Commencing June 26, 1950, a hearing on the demand for immediate possession was held before defendant, Alfred A. Arraj, as District Judge sitting specially in the District Court of the Second Judicial District, in which hearing the evidence presented by The Denver Housing Authority conclusively demonstrated that the District Court of the Second Judicial District was without jurisdiction to hear the case or to award immediate possession, all as is more fully hereinafter set forth. * * * "

"In the condemnation suit in the District Court, the evidence of The Denver Housing Authority affirmatively and conclusively showed that The Denver Housing Authority had at no time made any offer to purchase the property sought to be condemned and that there was not at any time a good faith effort made by The Denver Housing Authority to agree with plaintiffs on the value of the property sought to be condemned; nor was there any good faith negotiation by The Denver Housing Authority to attempt to buy the property at a fair price from Old Timers Baseball Association of Colorado or from Old Timers West-Bar-Val-Wood Park, Inc., * * *.

" * * * that no offer to purchase was at any time made to plaintiffs by anyone.

\* \* \*

" * * * it affirmatively appears from the record that the condemnation action seeking to seize plaintiffs' land was arbitrarily and illegally instituted without any offer for the purchase of said land having been made and even without the highest offer for the bare option having been made.

\* \* \*

" * * * that the jurisdictional requirement of a good faith attempt to agree upon the value of the property sought to be taken was disregarded.

\* \* \*.

"The Denver Housing Authority presented no evidence of any offer to the Old Timers except offer of the witness Hyman to obtain a mere option for $1.00 consideration to buy the land at a price below his actual authority and far below the price known to The Denver Housing Authority to be fair."

The complaint for the writ in prohibition was verified by William A. Black, as follows:

"State of Colorado,   )
         ) ss.
City and County of Denver )

"William A. Black, of lawful age, being first duly

sworn, on oath deposes and says: "(a) That he is the president of plaintiff, Old Timers Baseball Association of Colorado, a Colorado corporation. (b) That he is a director of plaintiff, Old Timers West-Bar-Val-Wood, Park, Inc., a Colorado corporation. (c) That he has read the foregoing complaint and knows its contents, and that the matters therein set forth are true to the best of his knowledge, information and belief.

"William A. Black

"Subscribed and sworn to before me this 14th day of July, 1950.

"My commission expires October 14, 1953.

"Elizabeth E. Long
Notary Public."

■ ■ The above contention of plaintiffs is based upon, (1) The provisions of section 2, chapter 61, '35 C.S.A.; and, (2) upon our interpretation thereof in *Mulford v. Farmers Reservoir & Irrigation Company,* 62 Colo. 167, 161 Pac. 301. The above statute provides: "In all cases where the right to take private property for public or private use without the owners' consent * * * has been heretofore or shall hereafter be conferred by general laws or special charter * * * and the compensation to be paid for in respect of the property sought to be appropriated or damaged for the purposes above mentioned, cannot be agreed upon by the parties interested, * * * it shall be lawful for the party authorized, to take or damage the property so required * * *."

In construing the above statute, we said in *Mulford v. Farmers Reservoir & Irrigation Company, supra:* "It is apparent from these express provisions of the statute that failure to agree upon compensation to be paid for land sought to be taken or damaged is made a condition precedent to the right to institute and maintain proceedings thereunder at all, and is clearly jurisdictional, * * *."

Attached to the defendants' return on order to show cause, is a transcript of the proceedings in the district

court, comprising two voluminous typewritten volumes, which we were required to examine to ascertain whether or not negotiations were in fact carried on in an effort to reach an agreement as to the value of the property, and whether or not the parties were unable to agree upon the amount of such compensation. The trial court, in denying plaintiffs' motion to dismiss the condemnation proceedings, found that there was sufficient evidence to establish that the Housing Authority had fully complied with the requirements of the above statute and decision prior to the institution of the condemnation proceedings. If there is any evidence in the record to sustain the action of the trial court, we are concluded thereby, and are required to find that it did not exceed its jurisdiction or abuse its discretion.

The testimony shows that the Housing Authority employed two appraisers who fixed the value of the two parcels belonging to the Old Timers Baseball Association, at $15,100; that two parties were employed to negotiate with the various owners, including the Old Timers corporation, in an effort to arrive at the value of the property; that Judge Black, president of the Old Timers, was called upon by one of the negotiators who showed him a map of the project which indicated thereon the amount the Housing Authority was willing to pay for each parcel involved, to wit: $13,500 for one, and $2100 for the other; that the offer was refused; and the negotiator was informed that the property was not for sale and that the association was not interested in selling the land; that the negotiations between Judge Black and the representative of the Housing Authority took place some time prior to the commencement of the condemnation action May 31, 1950; and that there was no substantial variance between the testimony of the representatives of the authority and Judge Black, with respect to the above testimony.

At the hearing before the trial court on June 26, 1950, Judge Black testified in part as follows: "Q. Did he

[Hyman, the Housing Authority Negotiator] make any offer at the time or ask for any option? A. Well, this plat had the figures on it, $15,100, and that was the price that he said he was authorized to pay for it. Q. Did he say that he was authorized to pay or that he was seeking an option at that price? A. He didn't mention an option. * * *

* * *

"Q. Judge Black, you testified that the price mentioned by Mr. Hyman, $15,000 was ridiculously low, I believe he stated. A. That is right.

* * *

"Q. When you told Hyman that the price was too low, what did he say about it? A. He said that the only figure he had was the figure contained on the plat, which was $13,000 for the ten acres and $2100 for this other strip which he said amounts to three acres. I didn't measure it."

Judge Black had previously testified: "I asked him [Mr. Gail, manager of the Housing Authority] for the plat, and he stated that I could have the plat, but he wanted it back, I think he said shortly before the first of the month. I called a meeting of the Board of Directors and I submitted a photostatic copy of this map which he gave me, * * *. And I presented this plat to the Board of Directors, together with the price which they had offered us. We discussed the matter. * * * and we considered it was an unreasonable demand. And we considered that the price was unreasonable, in view of the present market and the use for which we wanted it, * * *. * * * and so I just left the matter that way until I believe Mr. Hyman came back in and had a conversation with me about, 'Do you want to sell the property?' And I told him that the property was not for sale."

On cross-examination Judge Black further testified: "Q. You did however, testify that you took this matter of $15,100 up with the Board of Directors of the Old Timers Baseball Association of Colorado? A. I cer-

tainly did. Q. And you did testify that the said Board of Directors decided that the property was not for sale? A. It wasn't for sale at that price because we couldn't buy a site comparable to that for anywheres near that figure."

In the answer of the Old Timers Association in the trial court to the petition in condemnation, it is alleged:

"Replying further thereto, these respondents admit that they cannot agree with the petitioner on the amount of compensation to be paid for the property in question for the reason that said property was dedicated to the youth of America for a recreational park on April 12, 1946. * * * "

In the face of the above admission, and the sworn testimony of Judge Black at the hearing, it is difficult to understand the basis for the statement in the complaint filed in this proceeding that no effort had been made by the Housing Authority to agree upon the proper compensation to be paid for the parcels to be condemned prior to the commencement of the condemnation action.

We conclude that the trial court did not exceed its jurisdiction nor abuse its discretion.

The order to show cause is vacated and the writ discharged.