No. 24771.

The Interstate Trust Building Company, a Colorado corporation *v*. Denver Urban Renewal Authority, a body corporate and politic; The District Court in and for the City and County of Denver; and Hon. Hugh Arnold, District Judge Assigned

(473 P.2d 978)

Decided August 31, 1970.

428

CREAMER & CREAMER, GEORGE LOUIS CREAMER, for petitioner.

WINNER, BERGE, MARTIN & CLARK, FRED WINNER, for respondent Denver Urban Renewal Authority.

*En Banc.*

MR. CHIEF JUSTICE McWILLIAMS delivered the opinion of the Court.

THIS is an original proceeding wherein the Interstate Trust Building Company, a Colorado corporation, is the petitioner. It will hereinafter be referred to as Interstate. The named respondents in this original proceeding are the Denver Urban Renewal Authority, a body corporate and politic; the District Court in and for the City and County of Denver; and the Honorable Hugh Arnold, a district judge of the Eighth Judicial District assigned to sit in the Second Judicial District.

The Denver Urban Renewal Authority, hereinafter referred to as DURA, filed with the trial court a petition in condemnation wherein it sought to take by eminent domain certain property owned by Interstate. In its petition DURA asked that there be a determination of the compensation to be paid the owner and that upon payment of such sum that it be adjudged the owner in fee simple of the subject property. In the trial court, Interstate, as respondent in the eminent domain proceeding, filed its answer to the aforesaid petition in condemnation. The issues framed by the petition for condemnation and the answer thereto are now awaiting trial.

In the meantime DURA filed a motion asking for immediate possession of the property sought to be condemned, to which Interstate filed that which is denominated as a "Traverse of Motion for Immediate Possession." Hearing was then held on DURA's motion for immediate possession, at the conclusion of which the trial court granted the motion and ordered that DURA be given possession of the subject property on June 1, 1970, conditioned upon deposit with the trial court by DURA of the sum of $250,000 for the use of Interstate. By this original proceeding Interstate seeks review of the order of the trial court granting DURA immediate possession.

Interstate contends that the order of the trial court granting DURA immediate possession of the property in question should be reversed for any one, or all, of the following reasons: (1) there was no pleaded authority to condemn on the part of DURA; (2) the boundaries

of the Skyline Urban Renewal Project (in which the subject property is located) were changed by the Denver City Council after referral of the measure to a vote; (3) the area included within the Skyline Urban Renewal Project is not a slum or blighted area; (4) the proposed taking is not for a public use; (5) there was no good faith negotiation on the part of DURA prior to the institution of condemnation proceedings; and (6) the deposit ordered by the trial court is unconstitutionally low. Resolution of several of these contentions is found in *Rabinoff v. District Court,* 145 Colo. 225, 360 P.2d 114, where the constitutionality of the Urban Renewal Act of 1958 is upheld.

I.

■ Interstate initially contends that the petition in condemnation fails to set forth with sufficient clarity DURA's authority to condemn. In the petition DURA alleges that its authority to condemn is set forth in Chapter 58, section 5, of the 1958 Session Laws of Colorado, which is referred to as the Urban Renewal Law. In *Rabinoff* a similar allegation concerning the authority to condemn was held to be sufficient with the observation that "the source of the authority is adequately identified and . . . sufficiently complies with the general condemnation statute, C.R.S. '53, 50-1-2."

Counsel argues that in view of the re-enactment in 1963 by the General Assembly of the Colorado Revised Statutes, reference thereafter to 1958 Session Laws is insufficient. However, in the motion for immediate possession — and it is the order granting this motion with which we are here concerned — DURA alleged that its authority to condemn was the "power granted by C.R.S. 139-62-5." Under such circumstance we hold this to be sufficient identification of the authority under which DURA proposes to condemn and in connection with which it has now been decreed the right to immediate possession.

II.

■ Counsel next contends that the entire Skyline

Urban Renewal Project is void because the project was one "instituted by referendum" and thereafter "materially changed and altered" by subsequent councilmanic action. Such change and alteration is claimed to be prohibited by Article XX, section 5 of the Colorado consitutation and by Article II, sections C2.1 — C2.4 of the Denver City Charter.

In this regard we are here concerned with a referred ordinance — not an initiated ordinance — and the background of this referral is as follows: in 1966 certain preliminary ordinances relating to this urban renewal project were enacted by the Denver City Council; the opponents of urban renewal then circulated petitions and forced a referral of the entire matter to a vote of the electorate, with the voters thereafter voting "for" the referred ordinance. The project thereafter created by council had boundaries that were admittedly not identical with the boundary description contained in the referred ordinance. In this general connection it should be noted that though Skyline project is entirely within the boundaries spelled out in the referred ordinance, it does not contain, however, all of the area thus described. In other words, the Skyline project is an area reduced in size from the area described in the referred ordinance.

In the first place, it should be noted that the referred ordinance itself authorized the formation of a "project or projects" within the described area. Quite clearly, then, this contemplated that there could be more than one project within the described area and it would seem to logically follow from this that it also contemplated that a project could embrace something less than the total described area.

Additionally, though the constitutional and charter provisions above referred to would appear to bar the council from amending initiated ordinances, nevertheless such constitutional and charter provisions do not contain any similar words of limitation as concerns the power of city council to amend an ordinance which it adopted and

which was thereafter referred to a vote of the qualified electors and approved by them. See, *e.g., Astrowsky v. City of Kewanee*, 10 Ill. 2d 175, 139 N.E. 2d 241 where the Supreme Court of Illinois held that a state statute providing that any ordinance which is passed by council after proposal by petition or adopted by vote of the people cannot be repealed or amended except by vote of the people was inapplicable to an ordinance submitted to referendum. In that case Mr. Justice Walter V. Schaefer, speaking for a unanimous court, declared that "referendum provisions are negative in their operation" and that an ordinance submitted to referendum is not "adopted" by a subsequent favorable vote of the people, but that on the contrary such had already been "adopted" by the earlier action of the city council. In this connection we deem inapplicable the cases relied upon by Interstate, namely *McNichols v. Denver*, 120 Colo. 380, 209 P.2d 910 and *Denver v. Currigan*, 147 Colo. 125, 362 P.2d 1060.

### III.

It is next argued that the Skyline area is not a slum or blighted area. In this regard the record, however, contains exhibits indicating that both the Denver City Council and DURA had determined that the area in question is in fact a slum and blighted area. Upon hearing other evidence was also introduced by DURA bearing on the general nature of the area involved. Even if the building owned by Interstate be, as claimed, a "magnificent Victorian type edifice" (which is controverted by DURA), such would not in itself defeat the determination that the area, taken as a whole, is a slum and blighted area. Suffice it to say that the record before us is sufficient to bring it well within the rule of *Rabinoff*.

### IV.

The argument that the proposed taking is not for a public use because it is contemplated that the property now owned by Interstate will ultimately be sold to private interests is fully answered by *Rabinoff*.

## V.

■ The argument that there was no showing of good faith negotiation prior to the institution of the condemnation proceedings is not borne out by the record. DURA made an initial offer to Interstate for the property here in question of $197,500 and later raised that offer. Interstate eventually rejected these offers and by its actions declined DURA's invitation "to get together and negotiate." The fact that at the hearing for immediate possession DURA's appraiser testified that the market value of the property as of the date of the hearing was $215,000 does not mean that DURA had previously failed to negotiate on a good-faith basis. It takes more than one to negotiate and from the record before us it would certainly appear that Interstate was never in a negotiating mood. In this regard we note that in resisting DURA's motion for immediate possession it was Interstate's avowed position, as stated in its traverse, that DURA was not entitled to immediate possession, "or any possession."

## VI.

■ We do not find the deposit required by the trial court to be unconstitutionally low as urged by Interstate. Trigg, a DURA witness, testified that in his opinion the Interstate property was worth $215,000. Witnesses for Interstate opined that the property was worth from $500,000 to $800,000. The trial court required a deposit of $250,000 and we find no abuse of discretion in this regard. Nor do we find any abuse of discretion in the trial court's finding that DURA should obtain possession of the property owned by Interstate on June 1, 1970.

The rule to show cause heretofore issued is discharged.

MR. JUSTICE PRINGLE not participating.