## No. 27462

**City of Thornton, Colorado, a Municipal Corporation of the State of Colorado, acting by and through its Utilities Board v. The Farmers Reservoir and Irrigation Company, a mutual ditch company organized pursuant to the corporation laws of the State of Colorado; et al.**

(575 P.2d 382)

Decided February 6, 1978.                    Rehearing denied March 6, 1978.

Davis, Graham & Stubbs, John M. Sayre, Donald E. Phillipson, Robert V. Trout, Felicity Hannay, for petitioner-appellant City of Thornton, Colorado.

Akolt, Dick & Akolt, Robert A. Dick, for respondent-appellee The Farmers Reservoir and Irrigation Company.

Goldstein, Armour & Lonnquist, P.C., Alan A. Armour, Abe L. Hoffman, for respondents-appellees Victor L. Jacobucci and 229 other respondents, being stockholders of The Farmers Reservoir and Irrigation Company receiving water from its Standley Lake Division.

Holland & Hart, John U. Carlson, Charles M. Elliott, for respondent-appellee City of Westminster, Colorado.

.Gorsuch, Kirgis, Campbell, Walker and Grover, Joseph M. Montano, for respondent-appellee Rocky Mountain Fuel Co.

Lynn A. Hammond, for respondents-appellees Herman Ehler and Meta L. Keil.

Loup-Miller, a General Partnership, Melvin Dinner, for respondent-appellee No. 147.

Berenbaum, Weinberger & Susman, Michael L. Ehrlich, for respondent-appellee The 2131 Corporation.

Susan K. Griffiths, for amicus curiae Colorado Municipal League.

Vranesh and Musick, Alan E. Schwartz, Wayne B. Schroeder, Charles L. Sharp, Jr., City Attorney, for amicus curiae City of Northglenn.

Welborn, Dufford, Cook & Brown, Robert F. Welborn, John D. Faught, Bruce G. Smith, for amici curiae The Colorado Farm Bureau, North Colorado Boulevard Land Associates and North Washington Land Associates.

Lysle R. Dirrim, Moses, Wittemyer, Harrison & Woodruff, P.C., for amici curiae The Farmers High Line Canal and Reservoir Company and Lower Clear Creek Ditch Company.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The City of Thornton (Thornton), a home rule municipality, on November 14, 1973 brought a proceeding in eminent domain against The Farmers Reservoir and Irrigation Company (Farmers). The property sought to be condemned may be described generally as the water and water rights, ditches and ditch rights of the Standley Lake Division of Farmers.

Farmers is a mutual ditch company, organized and acting under sections 7-42-101 *et seq.*, C.R.S. 1973. The Standley Lake Division is one of four divisions of Farmers' extensive water distribution system. The legal title of the property sought to be condemned is in Farmers. At the time the action was brought Farmers had 1105 shareholders, 271 of whom held shares allocated to the Standley Lake Division. More detail as to the property of the Standley Lake Division and as to the use of the water of that division is to be found in *Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667 (1975).

Some of the Farmers' shareholders, who owned shares allocated to the Standley Lake Division, sought to intervene in the action. The district court found that they were not indispensable parties and denied their motion to invervene. *Jacobucci, supra,* was an original proceeding filed here on February 11, 1975. There Mr. Justice Erickson writing for a unanimous court stated that Farmers was obligated to store and transport the water involved, and that the so-called Standley Lake Division shareholders were, not only entitled to receive the water, but were the actual owners of the water rights themselves. These shareholders were held to be indispensable parties who should be joined in the action. After the announcement of *Jacobucci* on September 19, 1975, these stockholders were made respondents.

On June 29, 1975 the Water Rights Condemnation Act was adopted, to become effective on July 1, 1975. Sections 38-6-201 through 216, C.R.S. 1973 (1976 Supp.).[1]

---

[1]Colo. Sess. Laws 1975, ch. 319, 38-6-201 through 216 at 1408.

This legislation is here referred to as the 1975 Act. With notable exceptions, the 1975 Act contains the same provisions as sections 38-6-101 through 118, C.R.S. 1973 (Eminent Domain Proceedings by Cities and Towns).[2]

We now consider some of these exceptions. The 1975 Act provides that, in its petition for condemnation filed in the district court, the municipality shall pray for the appointment of three commissioners "to determine the issue of the necessity of exercising eminent domain as proposed in the petition." The 1975 Act further states that no municipality shall be allowed to condemn water rights for any anticipated or future needs in excess of 15 years. The 1975 Act further specifies that the municipality shall prepare a "community growth development plan" and a detailed statement concerning the proposed condemnation of water rights and the effect of the taking of the same. The plan and statement are to be presented to the commissioners.

Throughout these proceedings Thornton has maintained the position that it derives its authority to condemn from the Colorado Constitution and it is attempting to follow the procedures of the general eminent domain statute, sections 38-1-101 *et seq.*, C.R.S. 1973. It has consistently taken the position that the action was not brought under the 1975 Act for the reason that it regards provisions of that act to be unconstitutional as applied to it.

After the Standley Lake Division stockholders were brought into the action, six motions to dismiss and two motions for summary judgment were filed. Most of these contained the ground, among others, that Thornton had failed to comply with the provisions of the 1975 Act. The district court granted all of these motions in a single order of dismissal. In this order, preceding the decretal portion thereof, the court made findings and conclusions to the following effect:

1. Thornton need not comply with C.R.S. 1973 §§ 38-6-101 *et seq.*, since it is a home rule city and has elected to proceed under C.R.S. 1973 §§ 38-1-101 *et seq.*

2. Thornton "made a legitimate determination of the necessity of taking of the property" and Farmers' challenge to Thornton's determination of necessity of the taking was legally insufficient.

3. Thronton was not required to have an immediate future purpose for the property, and challenges based upon Thornton's condemnation for future uses were legally insufficient.

---

[2]The amendments of some of these sections, 38-6-101 through 118, appearing in the 1976 Cumulative Supplement to C.R.S. 1973 are not before us and we do not consider the effect, if any, of these amendments.

4. Thornton performed all acts required by "C.R.S. 1973 § 38-1-121." (This must mean the section now shown as 38-1-121, C.R.S. 1973 (1976 Supp.)).

Immediately prior to ordering dismissal under C.R.C.P. 12(b)(1) and 56, the court stated:

"Although the Court has found all jurisdictional issues except the applicability of the [1975 Act] in favor of [Thornton], that Act and [Thornton's] failure to comply with its new provisions are fatal to the maintenance of this action. Since all respondents except [Farmers] must be dismissed for [Thornton's] failure to comply with the [1975 Act], the mandate of the Colorado Supreme Court that all shareholders of the Standley Lake Division of [Farmers] as of November 14, 1973 be joined in this action has not been met, so the action against [Farmers] must also be dismissed."

From this order of October 6, 1976 a timely appeal was taken to the Colorado Court of Appeals. We accepted jurisdiction of the case from the court of appeals.

Prior to March 7, 1977, five rather voluminous briefs were filed with us. On that date one of the justices of our court presided over a preargument conference. This was attended by 19 attorneys representing about 200 respondents and four amici. Shortly thereafter nine more briefs were filed.

Counsel attending the preargument conference unanimously requested that we rule on the question of whether the provisions of the 1975 Act are facially unconstitutional. We decline so to rule because the constitutional questions before us involve home rule cities and not other municipalities. This factor, and other reasons, cause us to conclude not to pass on the question of facial constitutionality or unconstitutionality of the Act.

There was also unanimous agreement that we should rule on whether or not the provisions of the 1975 Act apply to Thornton. As will shortly appear, we hold that certain provisions cannot be constitutionally applied to Thornton. However, we do not address ourselves to whether other provisions of the Act can be constitutionally applied to Thornton.

## I. CONSTITUTIONALITY AS APPLIED TO THORNTON

### A. *Commission to Determine Necessity.*

The 1975 Act contains the following provisions relating to the commission:

"The municipality's petition for condemnation of a water right 'shall pray for the appointment of three disinterested commissioners appointed by the court . . . to determine the issue of the necessity of exercising eminent domain as proposed in the petition and, if the condemnation is to be allowed, to appraise the award of damages.' Section 38-6-202(1), C.R.S. 1973 (1976 Supp.)

"Prior to any hearing of condemnation the municipality shall prepare and update a community growth development plan and a detailed statement

describing: (1) the water rights to be required and their present uses; (2) the effects from the change of the use of the water to the proposed use, including economic and environmental effects; (3) unavoidable adverse and irreversible effects from the taking; and (4) alternative sources of water supply that might be acquired. These statements shall be presented to the commission. Section 203.

"It is the duty of the commissioners to '[e]xamine and assess the growth development plan and statement provided by the municipality . . . obtain necessary information pursuant to powers granted . . . and make a determination as to the necessity of exercising the power of eminent domain for the proposed purposes.' The commissioner shall provide 'one of the following recommendations to the court, based upon their findings: (I) There exists no need and necessity for condemnation as proposed.' Section 207(1).

"The commissioners shall, after hearing, certify the proper compensation to be made to the owners of property to be taken but, if 'the commissioners find there exists no need and necessity for the condemnation proposed, they shall make no finding as to the value of the condemned property.' Section 207 (3) and (4).

"After filing of the report of the commissioners, written objections may be made thereto. 'Any party interested in said proceeding may introduce such evidence as may tend to establish the right of the matter. The burden of proof to change any finding, award, or assessment of said commissioners shall be upon the person objecting thereto. . . . The court, for good cause shown, may modify, alter, change, annul, or confirm the report of the commissioners, or any part thereof, or may order a new appraisement and assessment as to any of the property affected in the proceeding by the same commissioners or by other commissioners appointed by the court.' Section 210."

■ The provisions of the 1975 Act relating to the appointment, action and effect of a commission to determine the issue of necessity of exercising eminent domain are unconstitutional as applied to Thornton as a home rule municipality. These provisions are in conflict with the express grant of eminent domain powers to home rule cities by *Colo. Const.* Art. XX, Sec. 1.

The 1975 Act does not state specifically the effect of a finding by the commission that there exists no need or necessity for condemnation as proposed. It is to be implied from the Act, however, that such a finding of the commission prevents the proposed condemnation; or, with the burden of proof upon a person objecting thereto, such finding is subject to judicial review.

As previously mentioned, the 1975 Act consists of sections 201 through 216. Pardoxically, after the provision in section 207(4) — to the effect that, if the commissioners find no necessity, they shall make no finding as to value — there is no mention in the remaining sections as to

the effect of a commission's finding of no need and necessity for the proposed condemnation. Rather, the many provisions relating to the commission in the remaining nine sections are limited to consideration of damages to be awarded.

Also paradoxical is the fact that the 1975 Act did not repeal the following provision then in effect, which the General Assembly reenacted in 1976:

"The court has no power to inquire into the necessity of exercising the power of eminent domain for the purpose proposed, nor into the necessity of making the proposed improvement, nor into the necessity of taking the particular property described in the petition." Section 38-6-105, C.R.S. 1973, and the same section appearing in the 1976 cumulative supplement.

■ To repeat, we hold that it is to be implied either that the condemnation action is to be dismissed if the commission finds lack of necessity, or that it is to be dismissed if such a finding is affirmed on judicial review.

■ We quote with approval this statement from the brief of the amicus curiae, Colorado Municipal League:

"The power of eminent domain is an inherent attribute of sovereignty limited only by applicable portions of the state and federal constitutions, and the exercise of the right of eminent domain is the exercise of the sovereign power. *People of Colorado v. District Court*, 207 F.2d 50 (10th Cir. 1953). A portion of that sovereign power is granted directly by the people of the state of Colorado to the citizens of home rule municipalities through the adoption of Sections 1 and 6 of Article XX of the Colorado Constitution."

*Colo. Const.* Art. XX, Sec. 1 provides in part that a home rule municipality:

"*shall have the power, within or without its territorial limits, to* construct, *condemn and purchase*, purchase, acquire, lease, add to, maintain, conduct and operate, *water works*, light plants, power plants, transportation systems, heating plants, and any other public utilities or works or ways local in use and extent, in whole or in part, *and everything required therefore* . . . and . . . the same or any part thereof may be purchased by said city and county which may enforce such purchase by proceedings at law as in taking land for public use by right of eminent domain." (Emphasis added.)

■ By the adoption of Article XX, and particularly the above quoted provisions thereof, the people of Colorado intended to, and in effect did, delegate to home rule municipalities full power to exercise the right of eminent domain in the effectuation of any lawful, public and municipal purpose, including particularly the acquisition of water rights. *Toll v. Denver*, 139 Colo. 462, 340 P.2d 862 (1959); and *Fishel v. Denver*, 106 Colo. 576, 108 P.2d 236 (1940).

Thornton's charter provides:

"The City shall have all the power of self-government and home rule and all power possible for a city to have, under the Constitution of the State of Colorado. The City shall also have all powers that now or hereafter may be granted to municipalities by the laws of the State of Colorado. . . ." §2.1

* * * *

"[T]he City shall have the power to acquire within or without its corporate limits . . . water, water rights and water storage rights . . . and may take the same upon paying just compensation to the owner as provided by law." § 16.7

The determination of necessity is an essential part of the power of eminent domain and, once necessity is determined by legislative act, no further finding or adjudication is required. *Londoner v. Denver*, 52 Colo. 15, 119 P. 156 (1911). The determination of necessity by Thornton was not reviewable by the judiciary absent a showing of fraud or bad faith. *Colorado State Board of Land Commissioners v. District Court*, 163 Colo. 338, 430 P.2d 617 (1967); *Dallasta v. Department of Highways*, 153 Colo. 519, 387 P.2d 25 (1963); *Mack v. Highway Commission*, 152 Colo. 300, 381 P.2d 987 (1963); *Denver v. Board of Commissioners*, 113 Colo. 150, 156 P.2d 101 (1945); and *Lavelle v. Town of Julesburg*, 49 Colo. 290, 112 P. 774 (1911).

For example, in *Denver v. Board of Commissioners, supra*, it was argued that Denver, pursuant to a statute, lacked authority to condemn land located more than five miles beyond the city's limits. This court held that the statutory limitation was inapplicable to Denver in the exercise of its condemnation powers granted by *Colo. Const.* Art. XX.

Relying on cases such as *Denver v. Sweet*, 138 Colo. 41, 329 P.2d 441 (1958), the respondents argue that the determination of necessity is a matter of statewide concern and, as a result, a home rule municipality is subject to statutory limitations in this area. We fully recognize that, generally, the legislative powers of a home rule municipality are superior with respect to local and municipal matters; and that, in cases of conflict between a statute and the ordinance of a home rule city relating to a matter of statewide concern, the statute must govern. Here, however, there is involved a specific constitutional power granted to home rule municipalities and, even though the matter may be of statewide concern, the General Assembly has no power to enact any law that denies a right specifically granted by the Colorado Constitution.

It is argued that the grant of power by *Colo. Const.* Art. XX, Sec. 1 to a home rule municipality to condemn, maintain, conduct and operate "water works" does not include water rights within the term "water works." Attention is directed to the fact that this grant of power, following the use of the term "water works" includes, "and everything required

therefore. . . ." It is inconceivable to us that "water works" do not include "water rights" or that water and water rights are not "required" to operate "water works." We hold that the term "water works" as used in the constitutional provision includes water and water rights. *See Toll v. Denver, supra*; and *Glendale v. Denver*, 137 Colo. 188, 322 P.2d 1053 (1958).

■ As already stated, Thornton's charter contains a provision that it shall have the power to acquire "water, water rights and water storage rights . . . and may take the same upon paying just compensation to the owner as provided by law." It is argued that the phrase "as provided by law" confines Thornton's power to condemn water rights to provisions of the state statutes. We do not agree with this argument. First, it is apparent that "as provided by law" refers to the payment of just compensation. Second, even if the phrase relates to the power to condemn water rights, the term "law" in "as provided by law" includes provisions of the Colorado Constitution.

■ Farmers contends that the determination-of-necessity provision of the 1975 Act simply re-establishes a condemnation procedure which was long recognized as being valid. It refers to C.R.S. '53, 50-1-6, which has long since been repealed.[3] No case is cited which holds that this statute, while in effect, and which gave the determination of necessity to three commissioners, could be applied to municipalities, much less to home rule cities. The mere presence of a power exercised in violation of the constitution does not authorize such violation. *Bedford v. White*, 106 Colo. 439, 106 P.2d 469 (1940); and *Leckenby v. Post Printing and Publishing Co.*, 65 Colo. 443, 176 P.490 (1918).

■ It is argued that the 1975 Act simply places in issue the matter of fraud or bad faith. Without question the court has authority to invalidate a municipality's decision of necessity upon a showing of fraud or bad faith committed by the municipality. *Arizona-Colorado Land & Cattle Co. v. District Court*, 182 Colo. 44, 511 P.2d 23 (1973). Here, however, this is not a matter of review upon a showing of fraud or bad faith. Rather, the statute provides for an independent study and findings by the commission on the question of necessity, viewing all aspects thereof. As already mentioned several times, this is unconstitutional.

Some of the amici submit the proposition that the provisions of *Colo. Const.* Art. XVI, Sec. 5 dedicates "the water of every natural stream" to the "use of the people of the state." This, it is argued, is in direct conflict with, and restricts, the powers granted in *Colo. Const.* Art. XX, Sec. 1. This argument overlooks the following emphasized portion of Art. XVI, Sec. 5:

---

[3]Colo. Sess. Laws 1961, ch. 118, 50-1-6(1) at 371.

"The water of every natural stream, *not heretofore appropriated*, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, *subject to appropriation as hereinafter provided.*"

The water here involved has all been appropriated.

B. *The Fifteen-Year Limitation.*

The 1975 Act provides that: "No municipality shall be allowed to condemn water rights, as provided in section 38-6-207, for any anticipated or future needs in excess of fifteen years. . . ." Section 38-6-202(2), C.R.S. 1973 (1976 Supp.). This must be considered as one of the new provisions in the 1975 Act, as to which Thornton's failure of compliance caused the district court to dismiss the action. Section 38-6-207, referred to in the last quoted provision of the statute, relates to the duties of the commissioners, including their duty to make a determination as to necessity and their power to find that no need and necessity exists for the proposed condemnation. It is obvious that the General Assembly, in adopting the so-called 15-year provision and referring to section 38-6-207, intended the 15-year limitation to be binding upon the commissioners in their determination of necessity.

This 15-year provision, as applied to home rule municipalities, is unconstitutional for the same reasons set forth earlier in this opinion. As already emphasized, the only review of a home rule municipality's finding of necessity results from fraud or bad faith. Under certain circumstances anticipating future needs for a period less than 15 years might be in bad faith and, under other circumstances, anticipating them for a period more than fifteen years might not be in bad faith.

C. *Furnishing of Irrigation Water by Farmers a Public Use.*

While no authority is cited therefor, it is argued that the service of irrigation water by a mutual ditch company to its shareholders is a public use. Our research has not developed any authority for this proposition. Assuming, however, that such service is a public use, it is argued that under the authority of *Beth Medrosh Hagodol v. City of Aurora*, 126 Colo. 267, 248 P.2d 732 (1952), a municipality may not condemn property dedicated to a public use for another public use. *Beth Medrosh Hagodol* recognizes that *Colo. Const.* Art. XX grants to home rule municipalities ample power to acquire by condemnation property already devoted to a public use. *See Denver v. Board of Commissioners*, 113 Colo. 150, 156 P.2d 101 (1945).

D. *Thornton's Sale to Users Outside Its Municipal Boundaries.*

It is argued that the sale by a municipality of water to users outside its boundaries is not a public use and that a home rule municipality does not have constitutional power to condemn water for such a purpose. Section 31-15-708(d), C.R.S. 1973 (1977 Repl. Vol.), formerly section 31-12-101(39), C.R.S. 1973, provides that the governing body of

each municipality has the power to "supply water from its water system to consumers outside the municipal limits of the municipality and to collect such charges upon such conditions and limitations as said municipality may impose by ordinance." We view this as a legislative pronouncement that such use of water is a public use, and we are bound by it. The right of a home rule municipality under the Colorado Constitution to supply water users outside the city limits was upheld in *Colorado Open Space Council, Inc. v. Denver*, 190 Colo. 122, 543 P.2d 1258 (1975).

We wish to make it clear, however, that we do *not* hold that a home rule city may condemn water for its needs which cannot reasonably be anticipated.

## II. "FAILURE-TO-AGREE" REQUIREMENT

Section 38-1-102, C.R.S. 1973 authorizes a municipality to file a petition in condemnation to acquire property for certain purposes when "the compensation to be paid for, in respect to property sought to be appropriated . . . cannot be agreed upon by the parties interested." It is contended by the respondent that there was no compliance with this provision. The district court found, first, that Thornton had satisfied this requirement so far as Farmers was concerned, and, second, the requirement was satisfied with respect to the later joined respondents, the Standley Lake Division stockholders.

On October 2, 1973, Thornton directed a letter to Farmers dated October 2, 1973, offering to purchase the assets of the Standley Lake Division for $9,300,000. This offer was predicated upon a valuation study performed for Thornton. In the letter Thornton requested a response by October 17, 1973. This letter was presented to the Farmers' board of directors on October 3, 1973 and was considered at a meeting of the shareholders of Farmers held on November 3, 1973. There was no response thereto. The district court found that Farmers was "not going to negotiate under any circumstances" and "I don't think these respondents have any intention of losing their property if they can avoid it."

On October 22, 1975 (this date being prior to the joinder of the Standley Lake Division stockholders on March 23, 1976), Thornton sent a letter to each Standley Lake Division stockholder of record on November 14, 1973 (the date the proceeding was first filed) offering to purchase each stockholder's interest in the property for $3,920 per share, being the per share portion of the $9,300,000 purchase price previously offered. The record discloses that of the approximately 270 shareholders who received this letter, only three accepted the offer.

█ The failure to agree upon compensation is a prerequisite to the commencement of a condemnation proceeding. *Mulford v. Farmers Reservoir and Irrigation Co.*, 62 Colo. 167, 161 P. 301 (1916). The burden is upon the petitioner to establish a failure to agree. *Stalford v. Board of County Commissioners*, 128 Colo. 441, 263 P.2d 436 (1953).

■ The prerequisite of a failure to agree upon the purchase price for the property sought to be condemned generally requires only that the condemning authority make a reasonable good faith offer to reach an agreement with the owner of the property for its purchase. Lengthy or face-to-face negotiations are not required. The making of a reasonable offer to purchase in good faith by letter and allowing the property owner time to respond is sufficient. If the property owner remains silent or rejects the offer without making an acceptable counter-offer, a condemnation action may be instituted. *Interstate Trust Bldg. Co. v. Denver Urban Renewal Authority*, 172 Colo. 427, 473 P.2d 978 (1970).

■ There is evidence in the record to sustain the ruling of the trial court as to the failure-to-agree requirement, and we hold that the district court did not exceed its jurisdiction or abuse its discretion. *Vivian v. Board of Trustees*, 152 Colo. 556, 383 P.2d 801 (1963); *Old Timers Baseball Association v. Housing Authority*, 122 Colo. 597, 224 P.2d 219 (1950).

### III. PROCEDURAL STATUTES TO BE FOLLOWED

Three separate procedures now exist by which a municipality may exercise its power of eminent domain. Sections 38-1-101 *et seq.*, C.R.S. 1973; sections 38-6-101 *et seq.*, C.R.S. 1973; and, with respect to water rights only, sections 38-6-201 *et seq.*, C.R.S. 1973 (1976 Supp.) (the 1975 Act). Each set of statutes contains procedural requirements and certain powers different from the others. The district court concluded that the home rule municipality could be required by the General Assembly to exercise its power of eminent domain over water supplies only through procedures set forth in the 1975 Act. (This opinion has already reversed the district court in certain aspects of this conclusion.)

■ We draw attention to the fact that twice this court has rejected the argument that a home rule municipality could be forced to follow a particular statutory proceeding in exercising its power of eminent domain. In *Toll v. Denver*, 139 Colo. 462, 340 P.2d 862 (1959), it was stated that Denver could elect to exercise its eminent domain powers under the procedural statutes best suited to its circumstances. In *City of Englewood v. Weist*, 184 Colo. 325, 520 P.2d 120 (1974), it was ruled that once Englewood (a home rule municipality) elected to proceed under sections 38-1-101 *et seq.*, C.R.S. 1973, it could not be forced to follow, comply with, or be bound by the provisions contained in section 38-6-101 *et seq.*, C.R.S. 1973.

### IV. VENUE OR JURISDICTION

Section 202 of the 1975 Act provides that the municipality shall file its petition in condemnation in "the district court of the district in which the municipality· is situated." According to Thornton's petition the property sought to be condemned is located in Jefferson and Boulder Counties. Thornton is situate in Adams County. The action was brought in the

District Court of Jefferson County. Without citation of authority, except the last quoted provision of the statute, Farmers contends that Thornton cannot confer jurisdiction upon the District Court of Jefferson County. We are not aware of any other argument made on the question of venue or jurisdiction of this condemnation action. We elect, therefore, not to pass upon the question either of venue or of jurisdiction. We do make the observation that, if the district court concludes that venue is in the District Court of Adams County but the defect is not jurisdictional, then it may give consideration to whether it may change the venue upon motion of a party or upon its own motion.

## V. THE CITY OF NORTHGLENN POSITION

The amicus City of Northglenn takes the position that the dismissal of the action by the district court should be affirmed by reason of Thornton's failure to join Northglenn as a respondent. We reject this as a ground for affirmance of the court's dismissal of the action. We do not pass, however, upon the question of whether Northglenn is entitled to be made a party respondent, and leave the determination of this matter to the trial court.

## VI. OTHER ISSUES

Other issues were discussed at the preargument conference. As to some of these the belief was expressed that we should make a determination. As to other issues, it was the consensus

"that these other issues need not be considered by the court in the present appeal in the event that the court's opinion contains language to insure that no party would be prejudiced, insofar as the opinion is concerned, as to any right of a party to raise any of such other issues in the trial court and that the effect of the opinion will be that no party shall be prejudiced by the opinion against raising any of such other issues on a subsequent appeal."[4]

We adopt the last quoted language, not only as to "other issues," but also as to all issues as to which there has not been a determination in this opinion or in the opinion in *Jacobucci, supra*, mentioned in the second paragraph of this opinion.

The judgment of the district court is reversed and the cause remanded with directions to vacate the order of dismissal and to proceed not inconsonant with the views herein expressed.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN dissent.

----

[4]From the report of the justice presiding at the preargument conference dated and filed in this court on March 22, 1977.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent.

## I.

### *Applicability of the Water Rights Condemnation Act of 1975*

The majority opinion concludes that the City of Thornton is not subject to the provisions of the Water Rights Condemnation Act of 1975, section 38-6-201 through 216, C.R.S. 1973 (1976 Supp.), because Thornton is a home rule city with the power of eminent domain, as provided in Article XX, Section 1 of the Colorado Constitution. The Colorado Constitution, however, grants a home rule municipality exclusive control only over matters of local and municipal concern. Matters of statewide concern remain subject to statewide regulation. *Spears Free Clinic and Hospital For Poor Children v. State Board of Health,* 122 Colo. 147, 220 P.2d 872 (1950); *People v. McNichols,* 91 Colo. 141, 13 P.2d 266 (1932).

A municipality's election to exercise eminent domain powers to condemn water rights is a matter of statewide concern, subject to statutory regulation by the General Assembly. Expanding water requirements of growing municipal populations are causing much of Colorado's scarce water, previously devoted to agricultural use, to be acquired for municipal use. Municipal condemnation of water rights necessarily has a tremendous impact upon the economies of agricultural areas and disrupts farm operations which are far distant from the condemning city. Therefore, I cannot accept the majority's conclusion that this area of statewide concern cannot be regulated on a statewide basis by the Water Rights Condemnation Act of 1975.

The regulations contained in the 1975 Act further indicate that the condemnation of water rights by municipalities is a matter of statewide concern. Condemning municipalities are required by the Act to prepare: (a) a community growth development plan which reflects not only present population and resource requirements, but also projected population growth and resource requirements, and (b) a detailed statement describing the present use of the water rights to be condemned and the adverse and irreversible effects that will result from the proposed taking. Section 38-6-203, C.R.S. 1973 (1976 Supp.). The community growth plan and the statement of effects must be submitted to a disinterested committee which is required to determine whether the proposed condemnation is necessary for the municipality's proposed purposes. Section 38-6-207(1), C.R.S. 1973 (1976 Supp.). Furthermore, all proposed condemnations are subject to a general prohibition against the taking of water rights for projected needs beyond fifteen years. Section 38-6-202, C.R.S. 1973 (1976 Supp.). These provisions insure that a municipality cannot condemn water rights in excess of its reasonable needs as projected over a legislatively determined reasonable period of time.

Our Constitution specifically provides that the unappropriated waters of the natural streams in our state are the property of the public and shall be made available for use according to the appropriation system. *Colo. Const.*, Art. XVI, Sec. 5. We have recognized that it is implicit in our Constitution that there be maximum utilization of our state's scarce water resources. *Fellhauer v. People*, 167 Colo. 320, 447 P.2d 986 (1968). The statutory limitation on the right of all municipalities to condemn water rights to a period of fifteen years of projected need achieves the maximum utilization of Colorado water by permitting parties who presently hold and exercise water rights to continue to do so until the reasonable needs of a municipality justify a condemnation action. *See City and County of Denver v. Sheriff*, 105 Colo. 193, 96 P.2d 836 (1939).

The constitutional provision relied upon by the majority opinion was not intended to permit municipalities to become the water brokers of the State of Colorado. Although holders of water rights are subject to the reasonable exercise of the power of eminent domain by municipalities, they should not be subject to the whim and unreasonable projections of over-ambitious municipalities. The legislative accommodation of these competing considerations, as expressed in the Water Rights Condemnation Act of 1975, clearly establishes that the condemnation of water rights by municipalities is a matter of statewide concern which requires statewide regulation.

The majority opinion permits a home rule municipality to condemn water rights, regardless of necessity as projected over a reasonable period of time, subject only to review for fraud or bad faith. Judicial review according to such a test promises to afford municipalities an almost unchecked hand to condemn water rights contrary to legitimate statewide concerns expressed by the legislature.

## II.
### *"Failure-To-Agree" Requirement*

The majority opinion sets forth a correct statement of two principles of the law of eminent domain when it declares that a failure to agree upon compensation is a requisite to the commencement of a condemnation proceeding and that the burden is upon the petitioner to establish a failure to agree. *Welch v. City and County of Denver*, 141 Colo. 587, 349 P.2d 352 (1960); *Stalford v. Board of County Commissioners*, 128 Colo. 441, 263 P.2d 436 (1953). Unfortunately, the majority opinion then proceeds to conclude that a mere unanswered offer conveyed by mail is sufficient to establish the required failure to agree. I would require that the condemning municipality establish: (1) a good faith attempt to initiate negotiations, and (2) a failure to engage in negotiations due to a refusal to bargain or a failure to agree after negotiation. I am not persuaded that proof of failure to respond to an initial offer is legally sufficient to meet the municipality's burden of proof.

I would, therefore, affirm the district court's dismissal.

MR. JUSTICE CARRIGAN has authorized me to say that he joins me in this dissent.