Bryce Don TRACY, Thomas G. Bradley, Haskell Scott, d/b/a Adl Sound, Gene Ferris, d/b/a Rocky Mountain Electric, Plaintiffs-Appellants,

v.

CITY OF BOULDER, City Council for the City of Boulder, Ruth A. Correll, Paul Danish, Gwen Dooley, Richard Meckley, Linda Jourgensen, George Boland, Beverley Sears, Greg Lefferdink, Annette Anderson, present members of the City Council of the City of Boulder, Boulder Urban Renewal Authority, Janet Roberts, Robert Spengler, Ted Tedesco, Roger Cracraft, Sally Martin, L. W. Kingdom, Robert Westdyke, present Commissioners of the Boulder Urban Renewal Authority, Frank Gray, former Executive Director of the Boulder Urban Renewal Authority, and Doug Houston, Executive Director of the Boulder Urban Renewal Authority, Defendants-Appellees.

No. 80CA0784.

Colorado Court of Appeals,
Div. II.

June 4, 1981.

Rehearing Denied July 2, 1981.

Certiorari Denied Nov. 2, 1981.

Rothgerber, Appel & Powers, Ira C. Rothgerber, Gregory B. Kanan, Steven Miller, Denver, for plaintiffs-appellants.

Joseph N. de Raismes, City Atty., Jane W. Greenfield, Deputy City Atty., Boulder, for defendants-appellees City of Boulder, City Council and staff.

Paul C. Benedetti, P. C., Paul C. Benedetti, James M. Harm, Boulder, Kutak, Rock & Huie, Gregory V. Johnson, Denver, for defendants-appellees Boulder Urban Renewal Authority, Commissioners and Staff.

PIERCE, Judge.

This is an appeal from entry of a partial summary judgment favoring the municipal defendants. We affirm.

The case involves plaintiffs' challenge to the City of Boulder's creation of an urban renewal authority pursuant to §§ 31–25–101 et seq. C.R.S.1973 (1980 Cum.Supp.). The Boulder City Council established the Boulder Urban Renewal Authority by ordinance. The Authority then submitted an urban renewal plan to the City and, following public hearing, the City Council determined that the proposed urban renewal area was "blighted" and adopted an ordinance which established an urban renewal plan for that area.

### I.

Plaintiffs first argue that the trial court erred by granting defendants' motion for partial summary judgment and thereby denying plaintiffs' request for a trial de novo on the determination that a "blighted area" existed. We disagree.

Section 31–25–103(2), C.R.S.1973, provides:

" 'Blighted area' means an area which, by reason of the presence of a substantial number of slum, deteriorated, or deteriorating structures, predominance of defective or inadequate street layout, faulty lot layout in relation to size, adequacy, accessibility, or usefulness, unsanitary or unsafe conditions, deterioration of site or other improvements, unusual topography, defective or unusual conditions of title rendering the title nonmarketable, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, substantially impairs or arrests the sound growth of the municipality, retards the provision of housing accommodations or constitutes an economic or social liability, and is a menace to the public health, safety, morals, or welfare in its present condition and use."

The Council's determination as to whether an area is blighted, when such determination relates to the need for an ordinance, is a legislative question and the scope of review by the judiciary is restricted. *United States Disposal Systems, Inc. v. City of Northglenn*, 193 Colo. 277, 567 P.2d 365 (1977); *McCray v. City of Boulder*, 165 Colo. 383, 439 P.2d 350 (1968). The appropriate issue is whether the municipality has acted within its statutory authority in exercising its legislative functions. The court's task is to exercise an independent determination to insure that the Council's decisions are based on evidence presented at Council hearings, that the ordinance is supported by fact findings, and that the Council applied the legislative standards set out in the urban renewal law. *See Public Utilities Commission v. Northwest Water Corp.*, 168 Colo. 154, 451 P.2d 266 (1969).

The trial court ruled, and we agree, that the Council's findings of blight are amply supported by evidence presented to the Council. The blighted area determination is supported by evidence of substandard housing and other forms of deterioration existing in the City of Boulder, as well as blight contained in the urban renewal area itself. The court noted that specific examples of blight were presented to the Council:

"Specifically, evidence was adduced of traffic congestion due to inadequate or defective street layout; faulty lot layout in relation to size, adequacy, accessibility, and usefulness; topographical conditions which pose a danger of flood and drainage water damage to life and property; defective or unusual conditions of title rendering titles non-marketable and other factors which singly and in conjunction with one another, impair the sound growth of a municipality, constitute an economic liability and menace the public safety and welfare."

The definition of blighted area contained in § 31–25–103(2), C.R.S.1973 (1980 Cum.Supp.), is broad and encompasses not only those areas containing properties so dilapidated as to justify condemnation as nuisances, but also envisions the prevention of deterioration. The absence of wide-

spread violations of building and health ordinances does not of itself establish arbitrariness on the part of the City Council. *Rabinoff v. District Court,* 145 Colo. 225, 360 P.2d 114 (1961).

■ Plaintiffs failed to produce genuine issues of material fact bearing on whether the City Council's actions were arbitrary and capricious. The argument that the Council acted under an improper motive in reaching its decision is without merit, as the motivations actuating legislators in making factual determinations are irrelevant so long as such determinations are supported by competent evidence in the legislative record. *McCormick v. City of Montrose,* 105 Colo. 493, 99 P.2d 969 (1939).

## II.

■ Plaintiffs further argue that the ordinances adopted here involve an unconstitutional taking of private property, when applied to eventual private ownership, in contravention of *Colo.Const.* Art. II, Sec. 14, and demand judicial review pursuant to *Colo.Const.* Art. II, Sec. 15 which provides:

"[W]henever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public."

*Rabinoff v. District Court, supra,* has fully answered the question of the constitutionality of urban renewal as a public use, ultimate private ownership notwithstanding. *Interstate Trust Building Co. v. Denver Urban Renewal Authority,* 172 Colo. 427, 473 P.2d 978 (1970). The correctness of the City Council's findings of blight does not come within the above cited constitutional proscriptions.

The judgment is affirmed.

VAN CISE and KELLY, JJ., concur.