**In re the MARRIAGE OF Tyrone B. RICE, Appellee,**

**and**

**Patricia Y. FOUTCH, Appellant.**

**No. 98CA1557.**

Colorado Court of Appeals, Div. I.

Sept. 2, 1999.

Gradisar, Trechter, Ripperger, Roth & Croshal, Charles D. Trechter, Pueblo, Colorado, for Appellee.

Koncilja & Koncilja, P.C., Lawrence D. Saunders, Pueblo, Colorado, for Appellant.

Opinion by Judge CRISWELL.

In this post-dissolution proceeding between Tyrone B. Rice (father) and Patricia Y. Foutch (mother), mother appeals from the order modifying child support and parenting time. We reverse and remand for the trial court's reconsideration of the issue of child support.

Based upon stipulations approved by the trial court, the parties shared joint custody of their two minor children. Father was designated as the primary residential custodian, and mother agreed to pay child support totaling $282 per month.

Father later filed a motion to modify child support, citing a decrease in the number of overnights the children spend with mother and other changed circumstances. Mother also filed a motion to modify parenting time and child support, citing a recent increase in the number of overnights with the children.

After conducting a hearing on both motions, the trial court initially entered an order decreasing mother's child support to $166 per month and establishing a new parenting time schedule. Thereafter, the trial court further reduced mother's child support obligation to $114 per month based upon a motion for reconsideration filed by mother.

I.

Mother argues that, in determining father's income for child support calculation purposes, the court erroneously excluded from those calculations the income father received from his overtime work. We agree.

Section 14–10–115(7)(a)(I)(C), C.R.S.1998, provides that overtime pay is to be included as "gross income" for child support purposes if the overtime is required by the employer as a condition of employment. *See In re Marriage of Marson,* 929 P.2d 51 (Colo.App. 1996).

Here, the evidence established that father was employed by a closely-held, family corporation in which he owned 16.8% of the capital stock. He was both an officer of the corporation and a member of its board of directors. In addition, he acted as a job-site foreman for the corporation's construction business.

Father testified that, in 1997, he was paid $10,900 for his services as an officer of this corporation and that he was paid $16 an hour for his work as job-site foreman. Hence, for a 40–hour week, father's hourly rate would have provided him an annual salary of approximately $33,280 ($16 × 40 × 52) for his work. However, his actual salary for that year (excluding his pay as an officer) was $60,722—a difference in excess of $27,000. In addition, father was paid $31,170 in that year in the form of compensation for his ownership interest in the corporation.

The $27,000 differential in his foreman's salary was undisputedly attributable to overtime pay. Father testified that he averaged between 20 to 25 hours overtime per week.

Although father testified that such overtime work was "pretty much" on a "voluntary" basis, he conceded that "not all of it" fell into this category and that his job as foreman could not "be done in a 40–hour week all the time."

Mother testified, without contradiction, that father's job as foreman meant that he was assigned to one or more specific construction jobs, each of which had a deadline for completion, and that it was father's responsibility to see to it that the assigned construction crew completed their tasks on time; if this was not accomplished, the company would be subject to substantial penalties. As a result, she said, throughout their married life, father's job required him to work substantial amounts of overtime.

Based upon this evidence, the court determined that mother had "failed to establish by a preponderance of the evidence that overtime is mandated by the employer, and since this is the sole ground argued for overtime inclusion, her request is denied."

Mother contends that an improper burden of proof was used in reaching that determination and that, in any case, the undisputed evidence established that the overtime work here was not "voluntary" within the meaning

of the pertinent statute. We agree with the latter contention.

Section 14–10–115(7)(a)(I)(A), C.R.S.1998, provides that a parent's "gross income" includes "income from any source...." That statute then lists numerous examples of such income, but it notes that the concept of gross income is "not limited to" the items described. That term, rather, is all-inclusive. Section 14–10–115(7)(a)(I)(B), C.R.S.1998, then provides that this term does not include benefits from a means-tested public assistance program, and § 14–10–115(7)(a)(I)(C), C.R.S.1998, provides that gross income includes overtime pay only if the overtime is required as a condition of employment.

If this latter provision is interpreted as a statutory exclusion from the general definition of "gross income," the initial burden would be upon father to establish that overtime work for which he received overtime pay was *not* a required condition of his employment. *See Cowin & Co. v. Medina*, 860 P.2d 535 (Colo.App.1992) (generally, party relying upon statutory exception has burden of establishing factual predicate for its application).

We recognize, however, that the statutory reference to overtime pay here does not contain the language of an exception. It could, therefore, be interpreted as establishing a condition precedent to the inclusion of overtime pay as a part of gross income. Under such an interpretation, it would be mother, not father, upon whom the burden of proof would be placed. *See Old Timers Baseball Ass'n v. Housing Authority*, 122 Colo. 597, 224 P.2d 219 (1950); *Board of County Commissioners v. Highland Mobile Home Park, Inc.*, 543 P.2d 103 (Colo.App.1975)(not selected for official publication).

However, we need not decide which party has the burden of proof under this overtime statute. Rather, we conclude that, irrespective of the placement of that burden, the undisputed evidence here discloses that the overtime worked by father was required because of the responsibilities of his position.

First, unlike the typical hourly-rated employee, there is no evidence in this record that father had a supervisor either to command that father perform overtime or to excuse him from doing so. Rather, his position as equity owner, director, and officer of this family-owned corporation reflects that he was his own supervisor.

Second, the evidence established, and the court found, that his position as vice-president and job-site foreman required his working more than other employees. Indeed, father himself specifically testified that he could not perform his job in a 40–hour week.

Third, the evidence established that the reason that father was required to work 20 to 25 hours of overtime per week was to assure that the jobs for which he was responsible would be completed in a timely fashion. A failure in this respect would result in penalties to be paid by the company to father's direct financial disadvantage.

Given the undisputed requirements of father's position, therefore, to conclude that father had a choice whether to work on a overtime basis is to ignore the economic realities of father's circumstances.

We conclude, rather, that the undisputed evidence here demonstrated, as a matter of law, that the overtime work performed by father was required as a condition of his employment and that the pay for such work was required to be included within father's gross income. The court's contrary conclusion was, in our view, erroneous. Hence, we shall remand the cause to the trial court for its reconsideration of this issue in light of the parties' circumstances at the time of such reconsideration.

II.

Mother also contends that the trial court erred in using a two-year average of father's investment income when calculating father's overall income for purposes of child support. We disagree.

At the hearing, father presented evidence that he had earned certain investment income as a result of his position as a shareholder of the company. He had income of $3035 in 1993 and $7481 in 1994, a loss of $1346 in 1995, and income of $31,171 in 1996. Father testified that he did not know why

the 1996 figure increased so dramatically and that he was uncertain what the most current year's amount would be.

Father asked the trial court to use an investment income amount consisting of the average of the figures for 1993–1996. Mother argued that the trial court should simply apply the figure for the most recent year. The trial court chose a middle ground and applied an average for the two most recent years and credited father with investment income totaling $14,916.

In our view, the trial court did not abuse its discretion in averaging father's investment income. *See In re Marriage of Hannum,* 796 P.2d 57 (Colo.App.1990) (trial court did not abuse its discretion in considering documentation of past earnings to determine the father's gross income); see also § 14–10–115(7)(c), C.R.S.1998 (requiring income statements of parents to be verified with documentation of both current and *past* earnings).

Indeed, in cases such as this in which there is a substantial fluctuation in a parent's income, or some component thereof, the trial court has discretion to consider, or use an average of, past earnings. *See In re Marriage of Nelson,* 297 Ill.App.3d 651, 232 Ill. Dec. 654, 698 N.E.2d 1084 (1998) (trial court acted properly in considering three-year average of father's income which fluctuated year to year depending on the profitability of the farming industry).

However, because we are remanding the cause for the trial court's reconsideration of the child support issue, that court should also reconsider the question of father's investment income under the circumstances in existence at the time of that reconsideration.

### III.

Finally, we disagree with mother's contention that the trial court erred when it refused to allow her ten weeks of primary parenting time with the children during the summer.

The determination of parenting time is a matter within the sound discretion of the trial court, upon its consideration of the child's best interests and the policy of encouraging the parent-child relationship. *In re Marriage of Elmer,* 936 P.2d 617 (Colo. App.1997).

Here, after noting that "a paramount concern is that children spend sufficient time with both parents," the trial court ordered a summer period of primary parenting time with mother lasting just over six weeks. Because of mother's recent move to the Denver area and the logistics associated with transporting the children back and forth from father's residence in Pueblo, the trial court made further adjustments which included an extension of mother's parenting time on alternate weekends. Mother does not dispute that, under the new order, she is actually entitled to more overnights (116) than under the prior order (110).

We are satisfied that, in crafting the new parenting time order, the trial court considered the children's best interests and did not abuse its discretion. *See In re Marriage of Elmer, supra.*

The court's order is affirmed, except insofar as it ordered mother to pay child support in the amount set by it. With respect to this portion of the order, the same is reversed, and the cause is remanded to the district court for its reconsideration of this issue in accordance with the views set forth in this opinion.

Judge METZGER and Judge DAVIDSON concur.